# IN THE COURT OF APPEALS OF IOWA

No. 18-1345
Filed October 10, 2018

**IN THE INTEREST OF J.W.,**
**Minor Child,**

**G.G., Mother,**
  Appellant,

**J.W., Father,**
  Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Adam Sauer, District Associate Judge.

A mother and father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Michael J. Moeller of Sorensen & Moeller Law Office, Clear Lake, for appellant mother.

Crystal L. Ely of McGuire Law Firm, PC, Mason City, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Jane M. Wright, Forest City, guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal the termination of their parental rights to their child, born in 2017. Both parents challenge the sufficiency of the evidence supporting the statutory grounds for termination, claim additional time to work toward reunification should be granted, and argue the State failed to make reasonable efforts to facilitate reunification.

## I.      Background Facts and Proceedings

The child, J.W., first came to the attention of the Iowa Department of Human Services (DHS) in April 2017, five days after birth, because of the mother's drug use. The mother tested positive for methamphetamine and barbiturates at separate times during prenatal exams and tested positive for methamphetamine two days after J.W.'s birth.[1] Further, the mother was being evicted, and she had no plans for housing. The court ordered the child's removal on April 19 based on the mother's substance-abuse issues and unstable housing. However, after DHS informed the mother of the removal, she disappeared with the child. The police found the mother at approximately 9:00 p.m. that same evening, with the maternal grandmother but without the child. She refused to disclose J.W.'s location, and the police took her into custody.[2] After receiving additional information, the police took possession of the child at approximately 10:00 p.m. at a local convenience store.

DHS then placed J.W. into foster care and provided the mother supervised visitation several times per week. During most visitations, the mother was attentive

---

[1] J.W.'s umbilical cord tested positive for amphetamines and methamphetamine.
[2] The police released the mother the next morning.

to the child's needs, but DHS noted a lack of a bond between the mother and child. The mother missed a number of visits and never progressed beyond fully supervised visitation. A maternal great-aunt, who lives in Minnesota, assumed care of J.W. in October. The mother encouraged the placement, despite knowing the effect on her own visitation. After the transfer of care to the great-aunt, the mother ceased contact and made no attempts to see J.W. or inquire about the child's well-being. Further, she failed to remain in contact with DHS, cancelling or failing to attend scheduled appointments until December when she informed DHS she was pregnant. In February 2018 the mother asked for supervised visits. DHS attempted to set up visitation but could not locate appropriate services and providers due to the lack of funding and the inability of Iowa providers to cross state lines. DHS did not know the mother's residence from December 2017 until April 2018, when she reported to DHS she was living in Minnesota with the father.

For a short period of time, the parents and J.W. both resided in Minnesota. The parents attempted to locate providers for supervised visitation but were unsuccessful. However, on several occasions the parents sat across from the great-aunt's house to watch J.W. J.W. was removed from the great-aunt's care in June due to safety concerns because, though the great-aunt reported feeling fearful and despite instruction, she failed to call the authorities when the parents watched her house. Further, her husband refused to acquire the required license to allow J.W. to remain in their care, so the child was returned to foster care in Iowa.

During the pendency of this case, the court ordered substance-abuse and mental-health treatment for the mother. The mother completed a mental-health

evaluation but did not follow any treatment recommendation to address her mental-health issues. Further, the mother attempted substance-abuse treatment on four occasions without success. She tested positive for drugs during each of her treatment attempts and failed to appear for any testing required by DHS. The mother continued to use methamphetamine until December 2017, when she discovered she was pregnant, and continued to use marijuana and alcohol throughout her current pregnancy. The mother was unemployed throughout this case, relying on services and friends to meet her needs. The mother did suggest the maternal grandmother, who also lives in Minnesota, as a potential placement or visitation supervisor since the maternal grandmother previously assumed custody of the mother's four other children. After investigation, DHS deemed the grandmother an inappropriate option because she was not a licensed foster parent and never went through the process, despite her contentions otherwise. Further, the grandmother failed to follow directives and set clear boundaries during the mother's visitation with her other children.

The father was arrested before J.W.'s birth, and he remained incarcerated during much of the pendency of this case. He was first in custody in a local jail and then extradited to Minnesota on a felony warrant. He remained incarcerated until his parole in January 2018. The father left Minnesota and attended the permanency review hearing in March, in violation of his parole. At the hearing, he gave false information concerning his parole officer. For leaving Minnesota to attend the hearing and failing to appear at his last meeting with his parole officer,

the father was arrested. He was in custody during the termination hearing and remains incarcerated.[3]

The juvenile court terminated the mother's and father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2017). As noted, both parents appeal.

## II. Standard of Review

"We review proceedings terminating parental rights de novo." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* The primary interest in termination proceedings is the best interests of the child. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000).

## III. Analysis

### A. Reasonable Efforts

First, both parents argue the State failed to make reasonable efforts toward reunification. The mother argues DHS failed to provide visitation or offer other services once she moved to Minnesota. The father argues DHS failed to secure services in order for him to have visitation while incarcerated either in Iowa or Minnesota. Both parents also contend DHS failed to proceed with J.K.'s maternal grandmother as a placement option.

The State must make reasonable efforts to provide services to a parent before termination proceedings may be instituted. *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002). The "child's health and safety shall be the paramount concern

---

[3] The father admits his current incarceration in his appellate brief.

in making reasonable efforts." Iowa Code § 232.102(12)(a). While the State must make reasonable efforts to provide services, "it is the parent's responsibility 'to demand other, different, or additional services *prior* to the termination hearing.'" *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015), as amended (Oct. 16, 2015) (quoting *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999)). "In general, if a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding." *C.H.*, 652 N.W.2d at 148. While both parents challenged the reasonable efforts of the State at the termination hearing, neither parent requested additional or alternative services during the multiple hearings prior to the termination hearing. Therefore, we conclude both parents have waived this issue and we do not consider it on appeal. *See T.S.*, 868 N.W.2d at 442.

B.      Sufficiency of the Evidence

Both parents claim there is insufficient evidence in the record to support the termination of their parental rights. The court terminated both the mother's and father's parental rights pursuant to section 232.116(1)(e) and (h). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).

Termination under subsection (h) can be ordered when there is clear and convincing evidence the child: (1) is three years of age or younger, (2) has been adjudicated a child in need of assistance, (3) has been removed from the physical custody of the parents for at least six of the last twelve months, or for the last six consecutive months and any trial period as home has been less than thirty days,

and (4) the child cannot be returned to the parent's custody at the present time. Iowa Code § 232.116(1)(h). "At the present time" has been interpreted to mean "at the time of the termination hearing." *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Neither parent challenges the establishment of the first three elements. Instead, they challenge only the fourth element, claiming the State failed to prove the child could not be returned to the mother's care. However, neither parent contends, neither during the termination hearing nor in this appeal, that J.W. could have been returned to their custody at the time of the termination hearing. Instead, both argue more time and opportunities for reunification should have been awarded to them.

The father concedes he was unable to assume custody at the time of the termination hearing as he was incarcerated. His only other argument is the mother is in a position to do take custody. "[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W.2d 454, 459 (Iowa Ct. App. 2005). The father needed "to advance [his] own reasons on appeal why, considering the juvenile court's findings regarding [his] individual strengths and weaknesses, [his] separate parental rights should not be terminated." *Id.* at 460. Consequently, the father lacks standing to assert the unique rights of the mother. *See id.* at 459–60. On our review of the record, in addition to the father's concession, we find the father was not able to take physical care of the child at the time of the termination hearing.

With respect to the mother, she does not argue that she could resume custody of J.W., either at the time of the termination hearing or now. Instead, she

claims that she is "ready, willing, and able to participate in substance abuse and mental health treatment." Along with her concession, the record provides clear and convincing evidence that J.W. could not be returned to the mother's care at the time of the termination hearing. She has a history of mental-health issues, which she has not addressed. She also has a long history of substance abuse, testing positive for substances while pregnant with J.W. and after the child's birth. She failed to complete any drug tests for DHS and tested positive multiple times during her substance-abuse treatment. She attempted to complete substance-abuse treatment on multiple occasions during the pendency of this case but was unsuccessful. She also admitted to the continuing use of alcohol and marijuana during her current pregnancy. There is nothing in the record about the mother reengaging in services for her substance-abuse and mental-health issues after she moved to Minnesota. Additionally, the mother has been unemployed during the entirety of this case and is not in a stable financial position to provide for J.W.

Finally, the mother never progressed beyond supervised visits with J.W. Though the mother demonstrated appropriate parenting skills during most visits, she was inconsistent with her visitation, often missing visits. After J.W. was transferred to the care of the mother's aunt in Minnesota, the mother failed to contact her aunt to inquire about J.W.'s health or well-being. She further disengaged from services and contact with DHS. Upon our de novo review, we conclude the child could not be returned to the mother's care at the time of the termination hearing.

Neither parent challenges whether termination is in J.W.'s best interest or argues that a statutory exception to termination applies. Accordingly, we need not

address those issues. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (noting appellate courts need not address the issue if a party does not challenge a particular step in the three-step termination framework).

C. Extension

Finally, both parents request additional time to work toward reunification. The mother contends she is "ready, willing, and able to follow through" with her substance-abuse and mental-health treatment. The father again makes arguments on the mother's behalf, asking that she be granted time to work toward reunification so that she, and eventually he, can satisfy the case plan goals.

To continue the placement of a child and extend the permanency determination, the court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

J.W. was removed from the mother's care due to her substance-abuse issues. Those issues remain, and she has continued to use substances throughout the entirety of this case, testing positive on multiple occasions. She attempted to address her substance-abuse issues in treatment but was unsuccessful. She started treatment on multiple occasions but stopped attending after a short time. Further, she was ordered to address her mental-health issues, but after obtaining an evaluation, she failed to follow through on any recommendations. There is no evidence in the record that she has reengaged in any services to address her issues after she moved to Minnesota.

The father was incarcerated at the time of J.W.'s birth and removal from the mother's care. He violated the terms of his parole by leaving the state and missing a meeting with his parole officer, which led to his current incarceration. Further, the father again focuses on the mother's ability to resume custody and does not assert reasons about how he will be able to assume custody within six months. On our de novo review, we find there is no evidence in the record showing the need for removal would no longer exist if the parents are granted additional time, and we decline to grant either parent an extension. We therefore affirm the juvenile court's order terminating the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**